IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| SCOTT ENOCHS and TAMMY WILLIAMS, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| vs. | ) ) ) | |
| DOMTAR PAPER COMPANY, LLC d/b/a KINGSPORT MILL | ) ) ) | CLASS ACTION COMPLAINT |
| Defendant. | ) ) | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs, Scott Enochs and Tammy Williams, by and through their undersigned counsel, on behalf of themselves and all others similarly situated, bring this putative class action against Defendant Domtar Paper Company LLC, as a result of property damages suffered due to noxious odor emissions from Defendant's recycled packaging mill and associated wastewater treatment operations located at 100 Clinchfield Street in Kingsport, Tennessee (hereinafter, the "Facility"). Plaintiffs assert claims for nuisance and negligence and seek compensatory and punitive relief against Defendant as well as injunctive relief not inconsistent with Defendant's federally and state enforced permits. Plaintiffs respectfully allege and state as follows:

**PARTIES**

1. At all times relevant hereto, Plaintiff Scott Enochs owns, resides, and intends to remain at 517 Mt. Ida Pl. in Kingsport, County of Sullivan, State of Tennessee. Plaintiff is an individual domiciled in Tennessee; therefore, Plaintiff is a citizen of the State of Tennessee.

1

2. At all times relevant hereto, Plaintiff Tammy Williams owns, resides, and intends to remain at 613 Fleetwood Dr. in Kingsport, County of Sullivan, State of Tennessee. Plaintiff is an individual domiciled in Tennessee; therefore, Plaintiff is a citizen of the State of Tennessee.

3. Defendant Domtar Paper Company LLC is a limited liability company organized under the laws of Delaware and registered in Tennessee. Defendant may be served with process in Tennessee through its registered agent, National Registered Agents, Inc., 300 Montvue Rd., Knoxville, TN 37919-5546.

4. Upon information and belief, Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in South Carolina.

5. At all times relevant hereto, Defendant, including its predecessors and agents, exercised control and ownership over the Facility located at 100 Clinchfield St., Kingsport, TN 37660.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, Class Members are citizens of a state different from the citizenship of the Defendant.

7. The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of Tennessee, because it regularly conducts business in Tennessee through its ownership and operation of the facility and Plaintiffs' claims arise through such contacts with the forum state.

8. Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because

Defendant has purposefully availed itself of the laws of the State of Tennessee and it benefits by regularly conducting business through its industrial operations in the state.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much, if not all, of the property that is subject of this action is geographically situated in this District.

## GENERAL ALLEGATIONS

10. Defendant owns and operates a recycled paper and packaging mill located at 100 Clinchfield St., Kingsport, TN 37660.

11. Defendant's operations at the Kingsport Mill use approximately 660,000 tons of recycled containerboard to produce linerboard for corrugated boxes each year.

12. Defendant's operations include the recycling of millions of tons of packaging, accepting 31.8 million tons of empty boxes throughout 2020 alone.

13. Defendant's recycling process involves receiving and sorting of cardboard and mixed paper, which are all formed into large bales delivered to Defendant's Facility.

14. The large bales of cardboard and paper are conveyed and pulped by vats and are removed of plastics and large contaminants, which are later burned to produce energy for the Facility.

15. Fine contaminants are removed from the pulp, which is then separated by long and short fibers and prepared for the Facility's containerboard machine. The machine converts the pulp into five-ton reels of containerboard which may be later used in the production of boxes or other packaging material.

16. Defendant's Facility features and utilizes a 23-acre wastewater lagoon for the treatment of effluent produced as a byproduct of its linerboard-making process.

17. From 2021 to 2023, Defendant's Facility was converted from a freesheet paper mill to a completely recycled containerboard mill. The wastewater lagoon was completely drained during this two-year process while the mill was inoperable.

18. Following the Facility's start-up from February to May 2023, significant operational issues emerged from the renewed use of the Facility's wastewater lagoon.

19. The Facility's wastewater treatment process (WWTP) is a known source of noxious odors and odiferous compounds including but not limited to hydrogen sulfide.

20. Defendant has publicly stated that hydrogen sulfide is "easily detected as the smell of 'rotten eggs'" and that the levels at the mill site and its wastewater treatment facility "can be unpleasant."[1]

21. Defendant's industrial processes at the Facility otherwise involve substantial pollutants, raw materials, and waste products that are highly odiferous.

22. A properly operated and/or maintained Facility such as Defendant's will not emit noxious odors into the surrounding residential areas.

23. The raw materials utilized and waste products generated at the Facility are noxious and highly odiferous, and its processing operations create the foreseeable risk that noxious odor emissions could be emitted into surrounding residential communities if reasonable steps are not taken to mitigate and control them.

24. Defendant is required to control its odorous emissions by, among other things, properly treating odiferous waste products; utilizing adequate odor mitigation and control

---

[1] https://domtarpackagingkingsport.com/capital-project/.

4
Case 2:26-cv-00047-DCLC-CRW     Document 1     Filed 03/10/26     Page 4 of 18     PageID #: 4

technologies at the Facility; effectively operating and maintaining its odor mitigation and control techniques to prevent off-site odors; adequately storing and disposing of organic waste produced through its industrial processes to prevent off-site odors; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

25. Defendant has emitted on occasions too numerous to list herein unreasonable noxious odors into the ambient air outside of the Facility's property boundary.

26. The noxious odors and emissions caused by Defendant's operation of the Facility have been and continue to be dispersed across all public and private land in the Class Area.

27. Defendant's emission control processes are inadequate, improperly maintained and operated, and fail to prevent noxious offsite odors from invading the private property of Plaintiffs and the Class.

28. Defendant has failed to properly operate and/or maintain its Facility to prevent offensive offsite odor emissions, despite knowledge that its Facility repeatedly and continually emits noxious odor emissions into the ambient air.

29. Defendant has failed to install, operate, maintain, and/or implement adequate odor mitigation and control strategies, processes, technologies, and/or equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and property of Plaintiffs and the putative Class.

30. Defendant's Facility is surrounded by residential properties.

31. On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiffs' property, including Plaintiffs' neighborhood, residence, and outdoor spaces, have been and continue to be physically invaded by noxious odors.

32. The noxious odors that entered Plaintiffs' property originated from, and were caused by, Defendant's Facility.

33. Defendant's Facility and its noxious emissions have been the subject of frequent complaints from residents in the nearby residential area.

34. Below is a small sample of odor complaints the City of Kingsport has received from residents related to Defendant's Facility:

   a. On April 25, 2024, a local resident reported "My wife walked our dog Sunday morning at Domtar. She said the smell coming off the water treatment facility for the cardboard plant was unbelievably horrible. it's probably something that needs to be kept track of. We really don't want to be known as the stinky chemical city."

   b. On July 16, 2024, a local resident reported "Heavy sulfide odor again this AM in Ridgefields neighborhood. Typical of what's been indicated to be an issue with emissions from DOMTAR processes. It really hurts quality of life for the community with any outdoor activities. Please continue to pressure DOMTAR to cleanup its act!"

   c. On September 3, 2024, a local resident reported "I live in Ridgefields and this weekend the smell emitting from Domtar was atrocious. Something is going to have to be done. I have called Domtar and reached out by email today but afraid that is doing no good whatsoever. I believe City Hall is going to have to do something for the taxpayers of Kingsport regarding this mess."

35. In addition, Plaintiffs' Counsel has received numerous complaints directly from nearby residents concerning the offensive odor on their property originating from Defendant's Facility:

   a. On November 20, 2024, Plaintiff Scott Enochs reported that he "couldn't go outside for long—couldn't do gardening—had to hire landscapers to mow lawn [and] maintain" due to the noxious odors from Defendant's Facility.

   b. On November 18, 2024, Plaintiff Tammy Williams stated "the odor is so bad that it fills our entire house (all doors and windows are closed). You cannot go outside and do activities when the odor is in the air."

   c. On November 17, 2024, putative class members William and Andrea Lane indicated "it stinks so bad that cookouts, pool use or just sitting outside is very

unpleasant. Guests comment on the terrible odor. We are unable to open windows for fresh air."

    d. On November 20, 2024, putative class members Christa Atwell and Chad Sparks reported "the smell is horrible. We have a hot tub and can not enjoy it because the smell is so bad. Using our grill [and] having family BBQ's or friends over is not possible because you can't even go outside. Our children can not jump on their trampoline or even enjoy bike rides around the neighborhood."

36. Defendant has been cited and penalized by regulators for failure to maintain its Facility in accordance with its operating permits.

37. On May 5, 2023, the Tennessee Department of Environment and Conservation (TDEC) issued a Notice of Violation (NOV) to Defendant for repeated violations of its National Pollution Discharge Elimination System (NPDES) wastewater permit limits, citing excess Biochemical Oxygen Demand (BOD) during February and March 2023.

38. On April 9, 2024, TDEC assessed Defendant a total $64,650 civil penalty for the repeated violations of Defendant's NPDES permits throughout 2023. The civil penalty was comprised of $13,024 assessed as damages, $12,930 as an upfront penalty, and the remainder contingent on timely submission of a corrective action plan/engineering report.

39. On October 17, 2024, TDEC issued an NOV to Defendant for exceeding its permit limits for hydrogen chloride, demonstrated by performance testing of its Biomass Boiler dated August 6 and 7, 2024.

40. Hydrogen chloride is also known to have a characteristically pungent odor.

41. On March 6, 2025, TDEC assessed Defendant an $8,000 civil penalty for violations of its Clean Air Act permits for exceeding hydrogen chloride emissions from its Biomass Boiler.

42. The above regulatory violations demonstrate a pattern of Defendant's failure to control its emissions and effluent discharge.

7

Case 2:26-cv-00047-DCLC-CRW    Document 1    Filed 03/10/26    Page 7 of 18    PageID #: 7

43. Defendant acknowledged that its wastewater lagoon is the source of the odor problem in the community, stating that "[t]he odor you smell is a result of the decomposition of wood fibers and organic matter in our effluent treatment system that originates in the recycled paper used to make our products."[2]

44. Defendant's odor emissions have been subject of numerous local media articles.

45. Defendant's manager of the Kingsport mill, Troy Wilson, explained that the odor is directly related to Defendant's new process at its Facility and that the odor originates from its wastewater lagoon.[3]

46. Despite clear knowledge of its odor emission problems, Defendant continues to frequently emit severe fugitive off-site odors into the ambient air beyond its property.

47. Defendant has failed to cease the noxious emissions, despite knowledge, and despite the emissions being abatable with reasonable care and diligence.

48. Plaintiffs and the Class are a limited subset of individuals in Kingsport, Tennessee and the Class Area includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition. Plaintiffs and the putative Class are not coterminous with the general public.

49. Members of the public in the Class Area, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have

---

[2] https://domtarpackagingkingsport.com/capital-project/#faqs.
[3] Reported by the Kingsport Times News based on his statements to the Kingsport Economic Development Board. https://timesnews.net/news/28239/editorial-domtar-taking-steps-to-address-odor-problem/.

not suffered damages of the same kind, in the form of loss of use and enjoyment of their private property.

50. Plaintiffs and the Class have suffered damages different in kind that are not suffered by the public at large because their injury is an injury to private property.

51. Defendant negligently, knowingly, intentionally, and recklessly failed to properly operate, repair, and/or maintain the Facility and its associated operations, thereby causing the unreasonable invasion of Plaintiffs' properties by noxious odors on unusually severe, frequent, intermittent, and ongoing recurring occasions. These failures are demonstrated by the administrative enforcement actions above and in part through the following:

   a. Failing to properly control the creation of hydrogen sulfide and/or other odiferous compounds from its wastewater treatment facility;

   b. Failing to properly design a wastewater treatment process that controls for increased odor emissions resulting from substantive input changes in Defendant's industrial operations;

   c. Failing to abate and mitigate the emission of noxious odors beyond its wastewater treatment facility;

   d. Failing to properly treat and/or dispose of effluent in accordance with Defendant's permits;

   e. Other failures that have yet to be discovered.

## CLASS ACTION ALLEGATIONS

52. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification under Federal Rule of Civil Procedure 23.

53. Plaintiffs seek to represent a Class of persons preliminarily defined as:

**All owner-occupants and renters of residential property residing within 2 miles of the Facility at any time within the applicable statute of limitations.**

54. This definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more subclasses if discovery reveals that such subclasses are appropriate.

55. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rules of Civil Procedure in that:

   a. The Class which includes thousands of members, is so numerous that joinder of all members is impracticable;

   b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

   c. Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

   d. The claims of the representative parties are typical of the claims of the Class;

   e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

   f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

   g. There are no unusual difficulties foreseen in the management of this class action; and,

   h. Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

   A. **Numerosity**

56. The approximate number of residential households within the Class Area is over 10,800.

57. The Class consists of several thousands of households and therefore is so numerous that joinder is impracticable.

   B. **Commonality**

58. Pursuant to Fed. R. Civ. P. 23(b)(3), there are numerous questions of law and fact common to the Class that predominate over any individual questions affecting Class members, including, but not limited to the following:

   a. whether and how Defendant negligently, knowingly, intentionally, and/or recklessly failed to operate and/or maintain the Facility and its operations;

   b. whether Defendant owed any duties to Plaintiffs;

   c. which duties Defendant owed to Plaintiffs;

   d. which steps Defendant has and has not taken in order to control the emission of noxious odors through the operation and maintenance of its Facility and its respective operations;

   e. whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

   f. whether it was reasonably foreseeable that Defendant's failure to properly operate and/or maintain the Facility and its operations would result in an invasion of Plaintiffs' property interests;

   g. whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and,

   h. the proper measure of damages incurred by Plaintiffs and the Class.

59. The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit certification of those issues under Fed. R. Civ. P. 23(c)(4).

   **C. Typicality**

60. Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

61. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The damages of Plaintiffs and the Class are different in kind than those suffered by other members of the broader community who do not hold private residential property interests. The claims originate from the same failure of the Defendant to properly operate and maintain the Facility and its operations.

62. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors causing damage to their property.

### D. Adequacy of Representation

63. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class. Plaintiffs have no conflicts of interest nor pecuniary interests in Defendant's operations that would affect their ability to serve as representatives of the class.

64. Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of noxious odors originating from Defendant's facility.

65. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class.

66. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' Counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

### E. Class Treatment is the Superior Method of Adjudication

67. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a. Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudications with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

b. Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

c. A class action offers the most appropriate means to adjudicate the claims and defenses by concentrating the litigation, preserving efficiency, and promoting judicial economy;

d. There are no unusual difficulties posed by managing the case as a class action.

68. Furthermore, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

69. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## **COUNT I – NUISANCE**

70. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

71. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

72. The noxious odors which entered the Plaintiffs' and Class's properties originated from the Facility, which was unreasonably maintained and/or operated by the Defendant.

73. The noxious odors invading the Plaintiffs' and Class's properties are indecent and offensive to people with ordinary health and sensibilities, and they obstruct the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. This includes but is not limited to:

a. Forcing Plaintiffs and Class Members to remain inside their homes and forgo the use of their yards, porches, or other outdoor spaces, and to generally refrain from outdoor activities;

b. Causing Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c. Creating significant discomfort in the everyday use of Plaintiffs and Class Members' homes and properties;

d. Depriving Plaintiffs and Class Members the full rental value of their homes and properties; and,

e. Causing Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

74. The above interferences are objectively offensive to a person of ordinary sensibilities, are seriously annoying and intolerable, have rendered significant discomfort to the reasonable use and enjoyment of Plaintiffs' and Class's properties, and have occurred over an unreasonable length of time.

75. Plaintiffs' and Class's properties are situated in such proximity to the Defendant's Facility as to constitute "neighboring" properties, in that they are near enough to be impacted by the tangible effects of noxious odors emitted from the Facility.

76. By failing to reasonably repair, maintain, and operate the Facility, thereby causing noxious odors to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and the Class's properties.

77. As a foreseeable, direct, and proximate result of the foregoing misconduct of the Defendant, the Plaintiffs and the Class suffered damages to their properties as alleged herein.

78. The damages suffered by the Plaintiffs and Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their lands and properties, and decreased property values, which are not harms suffered by the general public.

79. The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious odors, which is ongoing and which constitutes a nuisance.

80. Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

81. The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, and/or punitive relief.

## **COUNT II – NEGLIGENCE**

82. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

83. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Facility in a reasonable manner and to reasonably prevent fugitive emissions of noxious odors from the Facility.

84. The Defendant breached its duties by negligently and improperly maintaining and operating the Facility, which was the direct and proximate cause of the invasion by noxious odors upon the Plaintiffs' and Class's homes, lands, and properties on occasions too numerous to list individually.

85. Such invasions by noxious odors were the foreseeable result of the foregoing conduct of the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and the diminution of property values.

86. By failing to properly maintain and operate the Facility, the Defendant failed to exercise the duty of ordinary care and diligence.

87. Defendant's breach is demonstrated by its extensive administrative violations and civil penalties, and in the following operational failures:

   a. Failing to properly control the creation of hydrogen sulfide and/or other odiferous compounds from its wastewater treatment facility;

   b. Failing to properly design a wastewater treatment process that controls increased odor emissions resulting from substantive input changes in Defendant's industrial operations;

   c. Failing to abate and mitigate the emission of noxious odors beyond its wastewater treatment facility;

   d. Failing to properly treat and/or dispose of effluent in accordance with Defendant's permits;

   e. Other failures that have yet to be discovered.

88. The Defendant knowingly, recklessly, and with a conscious disregard for the rights of the Plaintiffs and Class allowed conditions to exist and perpetuate which caused noxious odors to physically invade the Plaintiffs' and Class's properties.

89. The Defendant's negligence caused harm to the Plaintiffs' and Class's properties, which entitles the Plaintiffs and Class to an award for compensatory, injunctive, and/or punitive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and the Class Members as against the Defendant;

D. An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E. An award of attorneys' fees and costs, including pre- and post-judgement interest;

F. An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class's properties constitutes a nuisance;

G. An Order holding that the Defendant was negligent in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and Class's private residential properties;

H. An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and

I. Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised in this Complaint.

Respectfully submitted,

/s/ *Thomas Greer*
Greer Injury Lawyers
6256 Poplar Ave.
Memphis, TN 38119
(901) 306-9689
tgreer@greerinjurylawyers.com

/s/ *Steven D. Liddle*
Steven D. Liddle*
Laura L. Sheets*
D. Reed Solt*
**LIDDLE SHEETS P.C.**
975 E. Jefferson Ave.
Detroit, MI 48207
(313) 392-0015
sliddle@lsclassaction.com
lsheets@lsclassaction.com
rsolt@lsclassaction.com
*Pro Hac Vice Motions to be submitted*

*Attorneys for Plaintiffs*